# Harkins v. Hughes.

*Bill in Equity against Executor, by Creditor of Testator's Widow.*

1. *Decedent's estate; creditor's remedy against executor or administrator.*—The remedy of creditors of a testator or intestate, to enforce payment of their debts out of his estate, is, exclusively, in the absence of equitable circumstances, by action at law against the executor or administrator in his official character; and the same principle applies to creditors of another person, whose debts are by the will charged on the testator's estate.

2. *Construction of will charging widow's debts on property.*—Where a testator bequeathed certain property, real and personal, to his wife for life, and on her death, "after defraying her funeral expenses and paying her just debts," to be equally divided among his three children, to whom the residue of his property was also bequeathed, charged with the payment of his own debts; *held*, that the debts of the widow were charged only on the property in which she had an

[Harkins v. Hughes.]

estate for life, and not on the testator's estate generally, and that the executor could not be charged with them in his representative character.

3. *Executor's assent to legacy.*—When an executor assents to a legacy of an estate for life, and delivers the property to the person to whom it is thus bequeathed, this operates as an assent to the legacy of the remainder, and divests him of all title as executor ; and if the property is delivered back to him on the death of the tenant for life, he holds it as bailee of the remaindermen, and not as executor.

4. *Right of retainer by executor.*—The executor has a right to retain, out of the assets which come to his hands, the amount of a debt due to him from the testator, or a debt due to him which is, by the terms of the will, charged on the property; and if, without retaining, he parts with the possession of the property, he cannot charge it with his debt in the hands of the person to whom he delivered it, without showing some excuse for his negligence and *laches.*

APPEAL from the Chancery Court of Pickens.

Heard before the Hon. A. W. DILLARD.

The bill in this case was filed on the 10th June, 1875, by R. J. Hughes, against Charles S. Harkins, as executor of the last will and testament of Archibald Hood, deceased, to compel the payment by said executor, out of the assets of said estate, of a debt which the complainant claimed to hold against Mrs. Martha A. Hood, deceased, who was the widow of said testator, for care and attention during her last illness, amounting to $175. The testator died in said county, in March, 1871, and his last will and testament was there duly admitted to probate soon after his death. His will contained the following provisions : "*First,* I give and bequeath to my beloved wife, Martha A. Hood, the use and improvements of my dwelling-house, with all the furniture belonging thereto ; also, my plantation, consisting of 529½ acres, more or less, embracing the place where I now live; also, I will and bequeath unto her two horses, or mules, as she may prefer ; also, two cows and calves, and corn and meat, sufficient in quantity to support her twelve months after my death. I will and bequeath unto her, also, $500 in money, to have and to hold the same to her for and during her natural life-time. *Second,* After my decease, if there should be a remainder after defraying all my funeral expenses, and paying my just debts, I will and bequeath that it be equally divided among my children ; they to have and to hold to their heirs, executors, administrators, and assigns, forever. *Third,* After the death of my beloved wife, I will and bequeath, after paying her funeral expenses, and paying her just debts, the above-named property, set apart for her use and benefit during her natural life-time, the same, or the *amount* (?) thereof, to be equally divided between Mary W. Hood, William A. Hood, and Samuel F. Hood. *Fourth,* I will and bequeath that Mary W. Hood, William A. Hood, and Samuel F. Hood live with, and see that my wife is taken care of during her natural life-time. *Fifth,* I nominate C. S. Harkins to be the

executor of this my last will and testament. In witness whereof," &c.

A copy of this will was made an exhibit to the bill, and the answer admitted that the exhibit was a correct copy; but, as set out in the transcript, the 4th item was entirely omitted, and is copied above from the bill; and the word "*amount*" in the 3d item, as copied from the exhibit, is written "*remainder*" in the bill. The bill alleged that Mrs. Hood, the widow, "after the death of her said husband, entered into the possession and enjoyment of some of the property bequeathed to her for life by her said husband, and held the same, or part of it, up to the time of her death, which occurred on the 30th September, 1873;" "that she remained upon the plantation, the use of which was bequeathed to her by her husband's will, until about the year 1872, when she removed to the house of complainant, where she continued to reside up to the time of her death;" that she found it necessary to make this change of residence," in order to obtain the care and attention her health and general condition required;" that the complainant and his family served and waited on her, supplying her wants, and bestowing all necessary care and attention during her last illness, which continued about seven months; that these services were worth $175, and had never been paid; that he had presented his account to said executor, who refused to pay it. It was alleged, also, that the widow duly executed and published her last will and testament, which was regularly admitted to probate after her death, and of which the complainant was appointed the executor, and, in the discharge of his duty, "turned over to the said Harkins, as executor of said Archibald Hood, the property bequeathed to her for life by her said husband; that same Harkins received the same, and divided it among the legatees of said Hood; and said property, complainant claims, was charged with the payment of the just debts of the said Martha A. Hood." The prayer of the bill was, "that an account be taken of what is due and owing to complainant on said debt, and that the said defendant may be decreed to pay the same; that, if said defendant shall not admit assets of said testator sufficient to answer the same, then that an account may be taken of the assets and effects of said testator's estate which have been received by said defendant, and that the same may be applied in due course of administration; and that the trusts of said will may be required to be executed by the said defendant; and that the complainant's claim, debt, or charge, may be decreed to be paid to him, with all cost and expenses," &c.; and for other and further relief.

The defendant demurred to the bill, for want of equity, for want of proper parties, and because complainant's remedy, if any he had, was at law; but the chancellor overruled the demurrer. The defendant also answered, admitting the execution of the will, and all the material facts above stated; alleging that he had not paid the complainant's debt or claim, because the testator's estate in his hands was not chargeable with it; and because the complainant ought to have retained for his debt out of the assets of the estate in his hands, before delivering the property to the legatees under the widow's will; and because the widow's estate was indebted to his testator's estate, on account of the $500 in money, which he had delivered to her, and which had not been returned to him by her executor; and he pleaded this as an equitable set-off. He admitted that he had paid the physician's account, and the funeral expenses of the widow; and said that he did so, because the complainant had represented that her estate was not able to pay those debts. It is unnecessary to notice the evidence, or the questions of fact which were litigated before the chancellor.

On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainant; and his decree is now assigned as error, together with the overruling of the demurrer to the bill.

M. L. STANSEL, for the appellant.—The funeral expenses and the debts of the widow were charged by the will, not on the testator's estate generally, but on the property which was bequeathed to her for life. Her executor had this property in his possession, and it was his right and duty to retain the amount of the charge on it which he now seeks to enforce out of the estate; and if he failed to do so, he can not now compel payment out of the testator's estate. His debt is extinguished by operation of law.—*Kimball v. Moody*, 27 Ala 130; *Glenn v. Glenn*, 41 Ala. 589; *Draughan v. French*, 4 Porter, 352–64; 2 Greenl. Ev. § 349.

L. M. STONE, *contra.*—The bill is not wanting in equity, being filed for the purpose of enforcing the trusts of the will, the payment of debts and charges, and marshalling the assets.—Perry on Trusts, 94, § 121; 12 Cush. 448; 23 Pick. 313; 2 Pick. 460; Curtis' Eq. Pr. 46, 47. The defendant accepted the trust, and he should be required to perform all the duties imposed.—2 Story's Equity, §§ 1065, 973; 19 Ala. 816, 259; 38 Ala. 695. Where the testator charges his lands with the debts of a third person, he will be regarded as having made them his own, and interest will be recoverable

from his death.—Redfield on Wills, pt. 2, pp. 565-6; 16 Vesey, 393. The will shows, very clearly, an intention to charge the widow's debts on the testator's estate; and the defendant himself acted on this construction, in paying the funeral expenses and the doctor's bill. He cannot be allowed to discriminate, paying some of the debts, and repudiating others.

BRICKELL, C. J.—The bill was filed by the appellee, as a creditor of Martha A. Hood, deceased, the widow of Archibald Hood, deceased, against the appelllant as executor of the will of said Archibald, to compel him, from the assets of his testator, to pay the debt owing by said widow at her death. The will of Archibald Hood contains these clauses : The first is a devise of real estate, and a bequest of personal property, including five hundred dollars in money, to his widow, said Martha A., during her life ; the second is a devise and bequest of the residue of his estate, after the payment of his debts and funeral expenses, and the setting apart to his widow of the property, real and personal, given her for life, to be equally divided between his children ; and the third provides that, after the death of his widow, *and after defraying her funeral expenses, and paying her just debts*, the property given her for life should be equally divided between those persons who are named. The appellant, as executor, assented to the devise and bequest to the widow, surrendering to her possession of the property, real and personal, and paying her the money bequeathed. After the death of the widow, the appellee, as her executor, without retaining for the debt due him from her, returned to the appellant the property in which the widow had a life-estate, except the money, which may have been partially refunded; and he divided it among the remaindermen.

1. An executor, or administrator, is not suable in his representative capacity, unless it is on a claim or demand arising from the act or default of the testator, or intestate ; or on claims and rights of distributees or legatees to participate in the distribution of the assets.—2 Redf. Wills, 251. The remedy of creditors of the intestate, or testator, against him, in the absence of special facts or circumstances rendering it inadequate, is exclusively in courts of law. It is certainly true that a testator may charge his estate with the debts of a third person, and a resort to equity may be necessary to enforce the charge. As this is the theory of the bill, we will inquire how far such charge has been created.

2. We can not assent to the argument, that the testator

[Harkins v. Hughes.]

has converted the funeral expenses, and debts of the widow owing at her decease, into his own debts. If the argument was admitted, it would be fatal to the appellee's right of recovery in the present suit. The remedy would be against the appellant at law, in his representative capacity; and, so far as appears, that remedy would be adequate, excluding equitable interference. The funeral expenses and debts of the widow are charged on the property in which she had a life-estate, and the residue of the estate—that which passes to the testator's children under the second clause of the will —is not subject to the charge. The testator contemplated the existence of such residue, and subjects it to no other charge than the payment of his own debts and funeral expenses. The gift to his children is of an entire, not a partial interest, and there is no indication of any purpose to postpone its possession or enjoyment until the death of the widow. Nor is there any indication of a purpose to subject it to diminution or exhaustion by any act of the widow, as it would be if it was charged with the payment of her debts and funeral expenses. This residue is that part of the testator's estate remaining after the payment of his debts and funeral expenses, and after the property, real and personal, devised and bequeathed to the widow for life, has·passed to her, and vested in possession. The remainder in the property devised and bequeathed the widow for life can not, in express terms, take effect, until her funeral expenses are defrayed, and her just debts are paid. Until they are paid, the remaindermen could not compel the surrender of the property to them.

It cannot be insisted that the children, who take the residue under the second clause of the will, could not have compelled its payment and delivery to them, after the lapse of eighteen months from the grant of letters testamentary, though the widow was in life; nor that there would have been any right in the executor to have required from them bonds to refund, for the payment, at the death of the widow, of her debts, &c. It is too plain for doubt or controversy, that the funeral expenses and debts of the widow are chargeable only on the property in which she had a life-estate. They are not debts of the testator, with which the appellant can be charged in his representative capacity. If any part of the property in which the widow had a life-estate was in his possession as executor, he would be, with the remaindermen, subject to a suit to enforce a charge against it for the payment of the debts. But there was none in his possession. He had assented to the devise and legacy to the widow, delivering the property to her; thereby assenting, not only to

(21)

the gift of the life-estate to the widow, but to the gift to the remaindermen; divesting himself of all title, and clothing the life-tenant and remaindermen with the entire estate, legal and equitable.—*Hunter v. Green*, 22 Ala. 3*z*6; *Nixon v. Robbins*, 24 Ala. 663; *Gibson v. Land*, 27 Ala. 117.

It is not of any importance that, on the death of the widow, the property was delivered to the appellant. His title and duty as executor was not thereby restored. He was, at the election of the remaindermen, their bailee; and, when he surrendered it to them, he was acquitted from all liability. Nor is it material, that the appellant may, as executor, have paid debts of the widow owing to other persons. Such payments were made in his own wrong, under a misconception of his authority and duty; have in them no element of estoppel, and afford no reason for compelling him to further wrong.

4. There is still another ground, fatal to the appellee's right of recovery. The property, charged with the payment of the debts of the widow, on her death passed into his possession, as her executor. His right to retain for his own debt, from that property, stands upon the same ground as his right to retain from the personal assets of his testatrix. Without payment of the debt, the remaindermen could not have compelled him to surrender. Voluntarily he surrenders the property to a bailee of the remaindermen; for in no other light could the appellant be regarded. An executor or administrator, with full knowledge of outstanding debts, volunteering to pay legacies, or make distribution, can not, if the assets prove deficient, compel the legatee or distributee to refund.—2 Redf Wills, 556; 2 Lomax on Ex'rs, 297; *Alexander v. Fisher*, 18 Ala. 374. The rule is not inflexible; but there must be some fact or circumstance, relieving the executor or administrator from the presumption of negligence, and evincing good faith on his part, or it can not be departed from. The rule applies to the present case; it was the fault of the appellee that he did not retain for his debt—he had the assets chargeable with it, and voluntarily surrendered them. If he sustains loss, it is his own neglect which inflicts it, as it is the want of prudence of the man who, with full knowledge of all the facts, pays money for which he is not liable.

The decree of the chancellor must be reversed, and a decree here rendered dismissing the bill, at the costs of the appellee in this court, and in the Court of Chancery.