## HOOPER *vs.* LANEY.

[BILL IN EQUITY FOR SPECIFIC PERFORMANCE OF CONTRACT FOR SALE OF LAND.]

1. *Certainty requisite in description of land in contract of sale.*—"The following part of that tract of land lately bought by R. P. L. from Mr. O , to-wit, a part bounded by the section line running from the N. E. corner of said tract to the stake put up by Bristow on the S. E.; thence, in a due north-west course, until it strikes the main road; thence, along the said road, till it strikes the northern line of said tract; thence, to the beginning,"—*held* a sufficient description, in a written contract for the sale of lands, to support a decree for the specific performance of the contract.

APPEAL from the Chancery Court of Russell.
Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed on the 6th October, 1859, by George D. Hooper, against Robert P. Laney; and sought the specific performance of a contract for the sale of certain lands, and an injunction of an action at law founded on an alleged breach of the contract in the non-payment of the purchase-money. The contract sought to be enforced, which was made an exhibit to the bill, was in the following words:

"Memorandum of 25th May, 1857. It is agreed between the undersigned, that G. D. Hooper shall have and be entitled to the following part of that tract of land lately bought by Robert P. Laney from Mr. Oliver—to-wit: a part bounded by the section line running from the N. E. corner of said tract to the stake put up by Bristow on the S. E.; thence, in a due north-west course, until it strikes the main road; thence, along the said road, till it strikes the northern line of said tract; thence to the beginning—for which he is to pay, in the same proportion and terms as to the value, as the said Laney paid for the whole, and deeds to be made on conclusion of payment.

(Signed)             "R. P. LANEY,"

                       "G. D. HOOPER."

The price paid by Laney for the whole tract was $1,000. The complainant insisted, that the part of the purchase-money which he was to pay, under the contract above set forth, was to be determined by the relative value of the land which he was to obtain as compared with the value of the residue of the tract; while the defendant contended, that the number of acres in the two portions of the tract was the criterion by which to determine the proportion of the purchase-money which each party was to pay. The tract of land bought by Laney from Oliver contained about ninety-nine acres. It was surveyed, and divided between the parties, after the making of the contract above set forth; when the part allotted to the complainant was ascertained to contain forty-nine acres, two roods, and twenty-six perches. There was no controversy between the parties, as to the quantity or boundaries of the land which the complainant was to have under the contract between them; but they differed as to the proportion of the purchase-money which he was to pay. The defendant's action at law, which the bill sought to enjoin, was brought to recover the purchase-money which, according to his construction of the contract, was due to him from the complainant.

The chancellor dismissed the bill, on motion, for want of equity, and dissolved the injunction, on the ground that the contract between the parties, as evidenced by the exhibit to the bill above copied, was too indefinite and uncertain to sustain a decree for its specific performance; and his decree is now assigned as error.

Geo. D. Hooper, for appellant.

PHELAN, J.—The chancellor concedes that the case comes properly within the jurisdiction of the court of chancery; but he dismissed the bill, and dissolved the injunction, on the ground that the description of the land, as set out in the bill and contained in the agreement, was too uncertain and indefinite to base a decree upon. The principle upon which the action of the chancery court proceeds, therefore, is, that the agreement is void for uncertainty; and the uncertainty alleged is the want of a definite

description of the land which Hooper asked to have conveyed to him, or decreed to him. The single inquiry, then, to which this case is reduced, is this : Is the description of the land sold by Laney to Hooper, as contained in the written agreement, too indefinite and uncertain to enable the court to know for what lot or tract it is asked to render a decree ?

The law in respect to description is well stated in *Boardman et al v. Lessees of Ford*, 6 Peters, 345. " If the lands granted be so inaccurately described as to render its identity wholly uncertain, it is admitted that the grant is void. The meaning of parties must be ascertained by the tenor of the writing, and not by looking at a part of it ; and if a latent ambiguity arise from the language, it may be explained by parol."

Upon considering carefully the description contained in this agreement, and after looking into the cases, we can not agree with the chancellor that the agreement is void for uncertainty, and that the bill should have been dismissed for that cause. In the language of one of the cases, " it should be a very gross case to justify such a course." 2 Green's Chan. Cases, 60. This agreement describes the land as "part of a tract lately bought by Laney from Mr. Oliver." It is then described as "bounded by the *section line* running from the *N. E.* (north-east) *corner* of said *tract* to the *stake* put up by *Bristow* on the *S. E.*" (south-east.) From this *stake*, the line is to run " a due north-west course, until it strikes the *main road* ; then "along *said road*, until it strikes the *northern line* of *said tract*, and thence to the beginning." Instead of there being any uncertainty about this boundary, we are inclined to think that, whenever the surveyor, or any other person, wishing to trace said "part of the tract," shall find the tract itself which was bought by Laney from Oliver, he immediately has a beginning point—namely, its "*north-east* corner"—which is upon a " *section line* ;" and the remainder of his tracing or survey has marks and bearings that are distinctly set out. He goes from the north-east corner on the section line, to the stake set up by Bristow. (This he can inquire after, if it be standing, and of its whereabouts if it has been removed

or lost by decay.) From this stake he proceeds in a due north-west course, until he strikes the *main road.* If there be more roads than one, he inquires for the "main road." He proceeds along this, until he reaches the northern line of the tract bought by Laney from Oliver, and follows it until he reaches the north-east corner at which he started.

That no difficulty exists in a survey of this part of the tract, is evinced, we think, by the fact that the respondent, in his answer to the bill, says, "a survey of said land, and a division thereof, was had *in accordance with said instrument,*" (the agreement set out,) "which survey defendant believes correct; and the amount which fell to said Hooper was forty-nine acres, two roods, and twenty-six perches." A deed was afterwards drawn up by Hooper, according to this survey, and executed by Laney; but they disagreed about the amount of the purchase-money, and the matter was thus left incomplete. But no question seems to have arisen between them, respecting the land for which the agreement called.

To show the action of the courts upon this question of description, and confirmatory of the view we take in this, we refer to a few of the cases.

*Barry v. Coombe,* (1 Peters, U. S. R. 64,) was a case for a specific performance. Coombe made out a statement of an account between himself and Barry, consisting of various items, amounting to a large sum. In this statement he credits Barry as follows: "By my purchase of your half of E. B. wharf, and premises, this day, as agreed on between us, $7,578 63." This paper was signed by Coombe, each party having a copy. On a bill for a specific performance, Barry set up the uncertainty of the agreement. The court said, for anything that appeared on the face of the instrument, "E. B. wharf" may be as definite a description of locality as F. street, and overruled the objection.

*Ring v. Ashforth,* (3 Iowa R. 452,) was a bill to enforce a specific performance of a contract to convey real estate, in which the land was described as follows: "Fifty-nine 37-100 acres of land, being so much of the west half of the north-east quarter of section twelve, in township number eighty-one, north, of range six, of the 5th P. M." (principal meridian).

It was objected, that there was no description definite enough to describe the land. The court said: "If this was an action of right, brought for a specific portion of this eighty; and plaintiff, to prove his title, had introduced his deed containing the description, the question, we think, would have been different. In that case, the court could not have ascertained, from his deed, that he had title to the identical portion claimed by his petition. And yet, between him and his grantor, the deed would have been sufficient to pass that interest in the eighty acres. Under such a deed, as between them, he would have a *known interest* in said west half of the north-east quarter, &c. It might not be a known interest in *exact location*, but definitely so as to *amount*. * * * * After he obtains his title, it may become a question between him and the person holding title to the remaining portion of the eighty, as to what part or portion each takes; and in that case, the description used may become of more importance. He may have to institute further proceedings, by his suit for partition, or otherwise, to settle and definitely fix his rights. But these are after considerations, in which these respondents, so far as we can see, have now no interest."

In the case of *Robison v. Hornbaker*, (2 Green's Chan. Cases, N. J. 60,) which was a case for a specific performance, the boundary mentioned in the agreement contained no reference to any county, or township, or legal subdivision of land; it made no reference to any adjoining tract; it was to begin "at a corner to be made in the middle of the road, and in the old straight line of Fenton and Lofter's surveys, and to run thence along said road to a certain store on the west side of said road, and south of another old road, and then to run from thence a westerly course, crossing the Brasscastle brook below where the small stream puts in from the meadow, and running on the south side of said creek out near where a certain stake is put up in the middle of the creek, &c. The only natural object having a proper name, in the entire boundary, is "Brasscastle brook"; the only other mark in the boundary, with a proper name, is "Fenton and Lofter's line"; the other marks and points are "a road", "a stone", a "stake", "a

large chesnut or rock-oak tree", and the like. There was a demurrer to the bill, on the ground that the description of the land was too indefinite. The judge says: "With these designations of locality in the description, I see no propriety in turning the party out of court on a demurrer. It should be a very gross case to justify such a course."

The decree below is reversed, and the cause remanded.